# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD E. BAYHURST,            )
                                )
        Plaintiff,           )
                                )  Civil Action No. 08-64 Erie
                                )
        v.                   )
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social Security,)
                                )
        Defendant.           )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

      Plaintiff, Richard E. Bayhurst, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. Plaintiff filed an application for DIB on February 23, 2005 alleging disability since October 30, 2004 due to having only partial use of his right shoulder (Administrative Record, hereinafter "AR", 51-52).[1] His application was denied, and he requested a hearing before an administrative law judge ("ALJ") (AR 35-39). Following a hearing held on April 23, 2007, the ALJ found that Plaintiff was not entitled to a period of disability or disability insurance under the Act (AR 13-22; 249-272). His request for review by the Appeals Council was denied (AR 4-6), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, we will deny the Plaintiff's motion and grant the Defendant's motion.

### I. BACKGROUND

      Plaintiff was born on August 17, 1954, and was 52 years old on the date of the ALJ's decision (AR 20; 51). He is a high school graduate, with past relevant work experience as a

---

[1] Plaintiff previously filed an application for DIB which was denied at the Agency level on November 21, 2002 (AR 13).

1

driver, machine operator, Zamboni driver and janitor (AR 20; 53; 264).

Plaintiff injured his right shoulder in a work-related accident in 1991 (AR 214). He has undergone five surgeries to repair this injury (AR 215; 263). His first surgery in 1991 was for impingment syndrome (AR 215). In 1992 and 1993 a torn tendon was repaired, as well as a rotator cuff (AR 215). He underwent arthroscopic surgery in either 1993 or 1994 and the ligaments around the shoulder were tightened in 1994 or 1995 (AR 215). In 2002, Mark Suprock, M.D., an orthopedic surgeon, formed an impression of persistent instability with post-traumatic arthritis of the right shoulder and opined that Plaintiff was restricted from engaging in repetitive use of his right arm, could perform no overhead activity or climbing and could not lift more than 20 to 30 pounds (AR 180).

On March 18, 2005, x-rays of Plaintiff's lumbar spine revealed mild anterior subluxation of L4 on L5 and findings most consistent with bilateral facet arthritis at L4-L5 and L5-S1 (AR 209).

On April 26, 2005, Plaintiff underwent a consultative examination performed by Valerie Gilreath, D.O. (AR 214-227). He relayed his right shoulder history and reported pain in "the axilla and across the anterior aspect of the shoulder" (AR 217). Plaintiff further reported numbness radiating down his right arm into his fingertips, that his arm felt asleep all the time and that occasionally he suffered from swelling in his right hand (AR 217). He reported that he had a work restriction of five to ten pounds with no climbing of ladders, lifting or working overhead and could not engage in repetitive motion (AR 217).

On physical examination, Dr. Gilreath noted that Plaintiff was morbidly obese and was in no acute distress (AR 217). Dr. Gilreath further noted that he did not exhibit any pain behavior during the examination (AR 217). Plaintiff exhibited no deformity of his bilateral shoulders, wrists, elbows or finder joints (Ar 217). The skin of both his upper limbs was warm and moist and he had no signs of Sudeck's reflex dystrophy (AR 218). Dr. Gilreath observed that his hands were clean but callused, as if he had been doing some type of heavy labor with his right hand (AR 218). He had good peripheral pulses in the upper limbs, as well as good muscle bulk and power in his upper extremities (AR 218). His right hand grip was reduced in comparison to his left hand grip (AR 218).

2

Dr. Gilreath reported that Plaintiff's sensory examination was grossly intact to temperature, pinprick and proprioception (AR 218). His motor examination was not tested because of the instability of his right shoulder, but based upon his observation of Plaintiff throughout the exam, he saw no evidence of brachial plexopathy or cervical radiculopathy (AR 219). Dr. Gilreath noted that Plaintiff's his gait was normal, he was able to walk on his toes, heels and tandem walk without any significant difficulty and there was no drifting of his upper limbs or muscle twitching (AR 219).

Dr. Gilreath's impressions were history of multiple surgeries; right shoulder instability as noted by Dr. Suprock with post-traumatic arthritis; history of stage II prostate cancer which was surgically treated; and depression with chronic pain (AR 219). Dr. Gilreath found no evidence of neurovascular compromise (Ar 219). Dr. Gilreath further found that Plaintiff's surgeries were not anatomically consistent with his subjective complaint that his right arm kept falling asleep (AR 219). He stated that Plaintiff's subjective complaints "far exceed[ed] those of the physical findings" (AR 219). Dr. Gilreath concluded that Plaintiff's impairments did not preclude him from engaging in all work activity (AR 220).

Dr. Gilreath completed a Medical Source Statement relative to Plaintiff's ability to perform work-related physical activities (AR 222-223). Dr. Gilreath concluded that Plaintiff could occasionally lift and/or carry two to three pounds; had no limitations with regard to standing, walking, sitting, pushing and pulling; could never climb ladders; and had no environmental limitations (AR 222-223).

K. Loc Le, M.D., a state agency reviewing physician, reviewed the medical evidence of record and completed a Residual Functional Capacity Assessment form on May 20, 2005 (AR 228-236). Dr. Le opined that Plaintiff could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; could stand and/or walk about six hours in an 8-hour workday; could sit about 6 hours in an 8-hour workday; was unlimited in his push/pull ability; and had no other limitations (AR 229-230). Dr. Le noted that Dr. Gilreath's lifting restrictions of two to three pounds were not suggested by his physical examination of Plaintiff (AR 234).

Plaintiff was examined by Vincent Rogers, M.D., an orthopedic surgeon on July 5, 2005 (AR 238-239). On physical examination, Dr. Rogers reported that Plaintiff's neck had normal

3

flexion and extension but was limited with lateral bending (AR 238). A neurologic examination of his upper extremities revealed normal reflexes (AR 238). There was numbness in all dermatomes of his upper right arm but none in his left arm (AR 238). Plaintiff's right shoulder had a range of motion of 150 degrees of flexion, 75 degrees of glenohumeral abduction, 70 degrees internal rotation and 50 degrees of external rotation (AR 238). Dr. Rogers noted he had chronic supraspinatus and infraspinatus tendon malfunction with atrophy of the muscle bellies and weakness in abduction and external rotation (AR 238).

Dr. Rogers reported that cervical spine x-rays showed significant facet sclerosis (AR 238). X-rays of Plaintiff's right shoulder showed two metal suture anchors in his proximal humerus from his previous surgery, his subacromial space was normal and the distal third of his clavicle had been removed (AR 238). The glenohumeral joint showed inferior spurring at the humeral head and the inferior glenoid process (AR 238). Dr. Rogers diagnosed Plaintiff with osteoarthritis of the right shoulder and degenerative spondylosis of the cervical spine (AR 238). He opined that these two diagnoses had disabled Plaintiff from the use of his right upper extremity for his job, in lifting and in driving (AR 238-239). Dr. Rogers stated that Plaintiff was limited to lifting 20 pounds, was not able to engage in overhead work with his right arm and was "disabled and limited at this time, and permanently for anything but sedentary activity"[2] (AR 239).

An MRI of Plaintiff's right shoulder dated February 22, 2007 showed slight degeneration and partial thickness tear of the supraspinatus tendon (AR 240). There was degeneration and partial thickness tear involving the biceps tendon with slight enhancement of the biceps tendon

---

[2]Sedentary work is defined in the regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

4

sheath and osteoarthropathy of the glenohumeral joint (AR 240).

Joseph M. Thomas, M.D., completed a Physical Residual Functional Capacity Questionnaire on March 22, 2007 stating that he saw Plaintiff on a monthly basis (AR 241-246). Dr. Thomas reported that Plaintiff suffered from right shoulder pain aggravated by arm use, tenderness and limited abduction and flexion (AR 242). Dr. Thomas opined that Plaintiff could stand/walk for a total of at least six hours in an 8-hour workday, was able to sit for more than two hours at one time and was able to stand for two hours at a time (AR 243-244). He did not require periods of walking around, a sit/stand option or unscheduled breaks during an 8-hour workday (AR 244). He was able to lift less than 10 pounds frequently, up to 20 pounds occasionally and 50 pounds rarely (AR 244). Plaintiff had no postural limitations or limitations with the use of his left hand (AR 245). During an 8-hour workday, Dr. Thomas opined that Plaintiff could use his right hand to grasp, turn and twist objects 80% of the time, perform fine finger manipulations 90% of the time and use his right arm for reaching 20% of the time (AR 245). Dr. Thomas indicated that Plaintiff's impairments would likely produce "good days" and "bad days" and he was likely to be absent from work about two days per month on average (AR 245).

On April 13, 2007 Manjot Kang, M.D., reported that Plaintiff had been her patient since July 2005 and a patient of her office since 1999 (AR 247). Dr. Kang reported that, based on her observation and review of Plaintiff's records, Plaintiff suffered from longstanding arthropathy to his right shoulder (AR 247). She reported that he had difficulty with abduction, adduction and internal and external rotation of his right shoulder (AR 247). Dr. Kang opined that Plaintiff could not lift more than ten pounds or push or pull with his right arm (AR 247). She further opined that it was not safe for him to climb ladders, work overhead or perform any repetitive motion with his right arm (AR 247). Finally, Dr. Kang stated that, upon reviewing Plaintiff's chart, reports from other physicians and past surgical history, he could not use his right arm for lifting, grasping, reaching, or use his right hand for activities involving finger manipulation (AR 247).

Plaintiff and Fred Monaco, Ph.D., a vocational expert, testified at the hearing held by the ALJ on April 23, 2007 (AR 249-272). Plaintiff testified that he suffered from constant right shoulder pain radiating down into his hand, as well as intermittent low back pain, but that his

medication was effective in relieving his pain (AR 257-258). He claimed that any activity with his right arm aggravated his pain and caused a loss of sensation (AR 258-259). Plaintiff stated that he had problems sleeping and napped during the day (AR 264). Plaintiff further testified that he suffered from urinary frequency as a result of his previous prostate cancer and could only go 45 minutes without access to a bathroom (AR 266).

Plaintiff claimed he was only able to walk a block or two before needing to stop and rest, could sit for 30 to 45 minutes before experiencing discomfort and lift about 20 pounds (AR 259-261). He required no assistive device to help him get around and could turn a doorknob, bend at the waist and pick an item up off the floor, dress himself, care for his personal needs and perform light housekeeping (AR 254; 258; 260-261). He was able to drive, although not long distances (AR 254; 265). Plaintiff stated that he fished approximately ten times in the past year and was able to eat out, go to movies and socialize (AR 262-263).

The ALJ asked the vocational expert if work existed for an individual of Plaintiff's age, education and past work experience, who was limited to light work that did not involve overhead reaching with the right arm; required no pushing or pulling against resistance with the right arm; involved lifting no more than five pounds with the right arm; involved no climbing with ropes, ladders, or other things that would require the use of the right arm; and was located within a two minute walk from restroom facilities (AR 267-268). The vocational expert testified that such an individual could perform a job as an unarmed guard, a document preparer or a cashier (AR 268-269). The vocational expert further testified that an individual who was limited to no more than frequent use of his dominant right arm for gross or fine manipulation could still perform the cited jobs (AR 269). Finally, the vocational expert testified that such individual would still be able to perform the unarmed guard position if he was limited to only occasional fine and gross manipulation with the dominant right arm (AR 269).

Following the hearing, the ALJ issued a written decision which found that Plaintiff was not entitled to a period of disability or disability insurance within the meaning of the Social Security Act (AR 13-22). Plaintiff's request for an appeal with the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 4-6). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. This case was resolved at the fifth step. The ALJ determined that Plaintiff had the residual functional capacity to perform light work[3] that did not involve lifting

---

[3]Light work is defined in the regulations as follows:

Light work involves lifting no more than 20 pounds at a time with

7

over five pounds with his right dominant arm, reaching overhead, pushing or pulling against resistance with his right arm or climbing, and that he must work in close proximity to restroom facilities (AR 17). He concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 21). In addition, the ALJ found that Plaintiff's complaints regarding the severity of limitations caused by his impairments were not fully credible and not supported by the medical evidence (AR 19). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff takes issue with the ALJ's finding that he can perform light work with certain restrictions, arguing that it is not supported by substantial evidence.

We first note that an ALJ must consider all relevant evidence when determining an individual's residual functional capacity. *See* 20 C.F.R. § 404.1545(a); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3rd Cir. 2000). "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett,* 220 F.3d at 121, quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2). Social Security Ruling ("*SSR*") 96-5p provides:

> The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to

---

> frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

> do, and many other factors that could help the adjudicator
> determine the most reasonable findings in light of the evidence.

*SSR* 96-5p (1996), 1996 WL 374183 *5. Plaintiff argues that the ALJ erred in rejecting the opinions of his treating and consulting physicians, erred in his credibility determination and in his evaluation of the vocational expert's testimony. We shall address each of these arguments in turn.

    *A. Evaluation of the medical evidence*

Plaintiff first argues that the ALJ failed to give controlling weight to the reports of his treating physicians, Drs. Kang, Thomas and Rogers, and the consultative examiner, Dr. Gilreath. At the outset we note that a treating physician's opinion is given controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record" *see* 20 C.F.R. § 404.1527(d)(2). Although the treating physician's conclusion should be accorded great weight, it may be rejected if it is unsupported by sufficient clinical data, *Newhouse v. Heckler*, 753 F.2d 283, 286 (3rd Cir. 1985), or contradicted by other medical evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3rd Cir. 1999). Where an ALJ chooses to reject the opinion of a treating physician, he must adequately explain in the record his reasons for doing so. *Sykes v. Apfel*, 228 F.3d 259, 266 (3rd Cir. 2000) ("Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."). Therefore, the ALJ may choose to reject a treating physician's opinion if it conflicts with other medical evidence and the ALJ explains his reasons for doing so.

Here, Drs. Kang, Rogers and Thomas all expressed varying opinions relative to Plaintiff's functional limitations. They all similarly agreed however, that Plaintiff experienced a reduced range of motion in his upper right extremity, as well as limited capacity to lift. Here, the ALJ credited a majority of the limitations found by Plaintiff's treating physicians in fashioning his RFC. For example, the ALJ adopted the restrictions regarding repetitive motion of the right arm as found by Dr. Kang (AR 17; 247). He further restricted Plaintiff from performing work involving overhead reaching, pushing/pulling against resistence with the right arm and climbing, which is consistent with the findings of Drs. Thomas and Rogers (as well as Dr. Suprock) (AR 17; 180; 239; 245; 247).

9

The only limitations rejected by the ALJ were Dr. Rogers' opinion that Plaintiff was limited to sedentary work, Dr. Thomas' opinion that he would miss approximately two days of work per month due to his impairment and Dr. Kang's opinion that he could engage in no fine finger manipulation. In rejecting these particular limitations, the ALJ found:

> In this case, none of the medical records support the significant right upper extremity limitations found by these physicians. There is nothing that indicates that the claimant cannot use his right arm at all as suggested by Dr. Kang, or that his impairment would cause him to miss two days of work per month (Dr. Thomas). Nor is there anything to suggest that the claimant is limited to sedentary work as opined by Dr. Rogers. As noted above, the claimant has received little current treatment for pain, and even his testimony suggests more robust functional abilities. The undersigned has given limited weight to these assessments.

(AR 20).

Although Dr. Kang opined that Plaintiff could not engage in any fine finger manipulation, the ALJ noted that Dr. Gilreath found Plaintiff's complaints far exceeded the physical findings, and his right hand was callused as though he had used his right hand for heavy labor (AR 18). Dr. Rogers' limitation of sedentary work is undercut by Plaintiff's own testimony relative to his functional abilities. Plaintiff testified that despite his right arm limitations, he was able to lift up to 20 pounds, drive, care for his personal needs, perform light housekeeping, fish, eat out, attend movies and socialize (AR 254; 258; 260-263). Finally, we observe that the record is devoid of any evidence supporting Dr. Thomas' opinion that Plaintiff would miss work approximately two days per month due to his right shoulder impairment. Because the ALJ properly considered the treating physicians' opinions in accordance with the appropriate standards, we conclude substantial evidence supports the ALJ's decision not to afford controlling weight to their opinions in their entirety.

Plaintiff further claims the ALJ erred in rejecting Dr. Gilreath's opinion, the consulting examiner. With respect to Dr. Gilreath's opinion, we note that the treating physician rule does not apply to a consulting physician's opinion. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3rd Cir. 1993) (doctrine had no application to physician who examined claimant once). Again, like the ALJ's consideration of the treating physicians' opinions, we observe that the ALJ did not reject Dr. Gilreath's opinion in its entirety. Rather, the only limitation rejected by the ALJ was the

restriction of lifting and carrying only two to three pounds, which the ALJ found inconsistent with Dr. Gilreath's findings on physical examination and Plaintiff's own stated limitations (AR 19). Such findings are supported by substantial evidence. Dr. Gilreath's physical examination of Plaintiff was essentially unremarkable. In fact, Dr. Gilreath found that Plaintiff's subjective complaints "far exceed[ed] those of the physical findings" and his impairments did not preclude him from working (AR 220). Plaintiff himself testified that he was capable of lifting 20 pounds (AR 261) and we observe that no treating physician imposed such a restrictive lifting limitation (AR 261).

Plaintiff next challenges the ALJ's credibility assessment, claiming that the ALJ failed to appropriately consider his subjective complaints of pain. *See* Plaintiff's Brief p. 5. An ALJ must consider subjective complaints by the claimant and evaluate the extent to which those complaints are supported or contradicted by the objective medical evidence and other evidence in the record. *See* 20 C.F.R. § 404.1529(a); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3rd Cir. 1999) (citing 20 C.F.R. § 404.1529). Once an ALJ concludes that a claimant has a medical condition that could reasonably produce the complained of symptoms, he or she must evaluate the intensity of the symptoms and the extent to which they impair the individual's ability to work. *Id*. "This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Id*. (citing 20 C.F.R. § 404.1529(c)). In assessing subjective complaints, Social Security Ruling 96-7p and the regulations provide that the ALJ should consider the objective medical evidence as well as other factors such as the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record. *See* 20 C.F.R. § 404.1529(c); *SSR* 96-7p, 1996 WL 374186 at *2. As the finder of fact, the ALJ can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3rd Cir. 1974). The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3rd Cir. 1983).

The ALJ acknowledged that in his determination of Plaintiff's RFC, he must consider all

symptoms, including pain, and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and *SSR* 96-7p (AR 18). The ALJ found that Plaintiff's allegations regarding his limitations were not totally credible in light of the medical evidence and his own description of his activities (AR 18-19). The ALJ noted that Plaintiff's medical records failed to show any significant active treatment or significant office care other than for routine maintenance (AR 18). He further noted that Plaintiff was able to work for many years at substantial gainful activity levels in spite of his upper extremity impairment (AR 18). The ALJ observed that Dr. Gilreath found that Plaintiff's subjective complaints far exceeded those of the physical findings and that his right hand was callused as though he had been doing heavy labor with his right hand (AR 18). Finally, the ALJ found that Plaintiff's activities called into question his claims regarding his upper extremity limitations, noting that he was able to drive, operate a boat and fish (AR 18).

Contrary to Plaintiff's contention, the ALJ did not completely reject Plaintiff's testimony; indeed, he accommodated his complaints in fashioning his RFC by limiting him to a restricted range of light duties in order to account for his right upper extremity pain and limitations of motion (AR 19-20). Plaintiff faults the ALJ for relying on the fact that he sought only conservative treatment for his pain and suggests that the ALJ inappropriately drew a negative inference from his current lack of treatment. *See* Plaintiff's Brief pp. 5-6. We fail to see where, in the ALJ's decision, he drew a negative inference relative to Plaintiff's treatment regime. Rather, we view the ALJ's consideration of this evidence as simply another factor the ALJ is *required* to consider in evaluating Plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c); *SSR* 96-7p, 1996 WL 374186 at *2; (in evaluating subjective complaints, the ALJ is to consider, *inter alia*, the treatment and medication the claimant has received). We find that there was substantial evidence in the record, taken as a whole, to support the ALJ's credibility determination.

Plaintiff finally challenges the ALJ's reliance on the vocational expert's testimony that there were a number of jobs in the national economy Plaintiff could perform despite his limitations. Plaintiff notes that the vocational expert testified that if he were limited to only occasional gross or fine manipulation with his right dominant arm, he would be unable to

12

perform the jobs of a document preparer or cashier. However, the vocational expert further testified that notwithstanding such limitation, he could still perform the unarmed guard position (AR 269). To the extent Plaintiff claims the ALJ should have credited the vocational expert's testimony that there were no jobs he could perform if he was unable to use his right arm at all, the ALJ is only required to accept such testimony if such limitation is supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987). For the reasons previously discussed, we find that the Plaintiff's proposed limitation was not supported by substantial evidence.

Plaintiff further claims that the ALJ's decision was not supported by substantial evidence because the job identified by the vocational expert as suitable for him, namely the unarmed guard position, has physical functions which are in conflict with the description given for that job in the Department of Labor's Dictionary of Occupational Titles ("DOT"). Specifically, Plaintiff contends that certain physical functions, such as examining doors, windows, gates; apprehending and expelling miscreants; recording data; boilertending; arresting trespasses; and patrolling with a guard dog on a leash, are well beyond his physical limitations and inconsistent with the ALJ's hypothetical that limited him to light work with restrictions. Consequently, he contends that the ALJ's finding that there was no conflict between the vocational expert's testimony and the DOT was erroneous.

We disagree. As pointed out by the Commissioner, the DOT does not mandate that an individual must be capable of performing all of the physical functions of a particular job. *See Shears v. Barnhart*, 2006 WL 1641635 at *2 (E.D.Pa. 2006) (finding that the DOT lists the approximate maximum requirements for a position as it is generally performed, not the full range of requirements as it might be performed in specific settings and the DOT is merely a starting place from which to assess job definitions). Therefore, we do not perceive a conflict in the vocational expert's testimony, since he specifically testified that Plaintiff could perform the unarmed guard position given his RFC for less than a full range of light work (AR 267-268).

### VI. Conclusion

An appropriate Order follows.

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RICHARD E. BAYHURST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 08-64 Erie |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**<u>ORDER</u>**

AND NOW, this 9th day of December, 2008, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 6] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 10] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Richard E. Bayhurst.

The clerk is directed to mark the case closed.

                                          s/ Sean J. McLaughlin
                                          United States District Judge

cm: All parties of record.